```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────
YAMILEE MONDESIR,
                    Plaintiff,          14-cv-6496 (JGK)

     - against -

NORTH SHORE LIJ HEALTH SYSTEM, ET       MEMORANDUM OPINION AND
AL.,                                    ORDER
                    Defendants.
────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

This is an employment discrimination action brought by the plaintiff, Yamilee Mondesir, against North Shore-Long Island Jewish Health System ("North Shore"), Rachael Tabershaw, and Alberina Balidemic.  The plaintiff was employed by North Shore and worked as a Practice Secretary at Lenox Hill Hospital, a member hospital, from around July 1, 2013 through October 18, 2013.  The plaintiff alleges that two supervisors subjected her to a hostile work environment based on her race, and that her employment was terminated in retaliation for her complaining about her treatment in the workplace.

The plaintiff brought claims for:  (1) a hostile work environment based on racial harassment under § 1981 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981; (2) the same hostile work environment under the New York City Human Rights Law (the "NYCHRL"), Administrative Code of the City of New York § 8-107(1); (3) retaliation under NYCHRL § 8-107(7); and (4)

aiding and abetting against the individual defendants under NYCHRL § 8-107(6). The plaintiff also brought a claim under New York State Labor Law § 741, which she withdrew in response to the defendants' motion for summary judgment.

The defendant moves for summary judgment dismissing the Complaint in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is **granted**.

I.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S.

at 323.  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp. 2d 386 (S.D.N.Y. 2013), aff'd, 586 F. App'x 739 (2d Cir. 2014).

II.

The plaintiff, a black woman born in Haiti, was employed by Dr. Cordia Beverly as an assistant in her medical practice located at 1085 Park Avenue (the "1085 Practice") for more than twenty years. (56.1 Stmts. ¶¶ 2, 7-8.) Lenox Hill Hospital, a member of North Shore, acquired Dr. Beverly's practice on July 1, 2013. (56.1 Stmts. ¶ 5.) The plaintiff was employed as a Practice Secretarial Associate by North Shore until her termination on October 18, 2013. (56.1 Stmts. ¶¶ 13, 15.) The first six months of her employment by North Shore were deemed an Assessment Period. (56.1 Stmts. ¶ 11.) As a Practice Secretarial Associate, the plaintiff performed administrative duties such as scheduling patient appointments. (56.1 Stmts. ¶ 15.)

Rachael Tabershaw was employed as Practice Business Manager during the plaintiff's period of employment by North Shore. (56.1 Stmts. ¶ 16.) Alberina Balidemic was employed as on-site manager for the 1085 Practice beginning September 3, 2013, and reported to Tabershaw. (56.1 Stmts. ¶¶ 17, 19.)

The plaintiff alleges that in August 2013, Balidemic entered the office and said "Hi girl" to her. (56.1 Stmts. ¶¶ 34-35.) She then told Balidemic that she would like to be referred to by her name. (56.1 Stmts. ¶ 37.) The parties dispute whether "Hi girl" was a friendly greeting. (56.1 Stmts.

¶ 35.)  The plaintiff alleges that on a second occasion in August or September 2013, Balidemic walked by the plaintiff and her colleague Jorina Duhaney, who is also black, and said "Hi girls."  (56.1 Stmts. ¶¶ 42, 43.)  The plaintiff further alleges that Balidemic walked by and said "Hi girl" on a third occasion in August or early September 2013.  (56.1 Stmts. ¶ 45.)

Additionally, in emails sent August 12 and September 3, Balidemic wrote that she would have "the girls" assist with certain requests.  (Pl.'s Decl. Ex. 11.)

The plaintiff also alleges that in a staff meeting on September 6 attended by the plaintiff, Tabershaw, Balidemic, Duhaney, and another practice employee, Duhaney said people should not yell at one another, and the plaintiff said people should respect one another.  (56.1 Stmts. ¶¶ 56-64.)  When asked to explain, the plaintiff responded that "Balidemic has been referring to [her] as a girl after [she] specifically ask[ed] her not to call [her] girl, to call [her] by [her] name."  (56.1 Stmts. ¶ 61.)  She further alleges that she was subject to intense scrutiny after this meeting until she was terminated on October 18, 2013.  (56.1 Stmts. ¶¶ 115-16, 118.)

### III.

The plaintiff alleges that Balidemic's use of the word "girl" was racially derogatory and created a hostile work environment in violation of § 1981 and the NYCHRL.  She also

5

alleges the defendants retaliated against her in violation of the NYCHRL.  The defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

A.

Under § 1981, the plaintiff must establish two elements to prove that she was subjected to a hostile work environment based on race.  First, the plaintiff must demonstrate that the harassment was "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment."  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (internal quotation omitted)[1]; see also Hill v. Citibank Corp., 312 F. Supp. 2d 464, 476 (S.D.N.Y. 2004).  Isolated incidents typically will not create a hostile work environment, unless the incidents are so severe that they alter the terms and conditions of employment.  Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004).  "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)); see also

---

[1] The standard for hostile work environment claims under Title VII and § 1981 is the same.  See Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004).  Cases interpreting Title VII hostile work environment claims are thus cited to interpret the plaintiff's § 1981 hostile work environment claim.

6

Thelwell v. City of New York, No. 13 CV. 1260 JGK, 2015 WL 4545881, at *10 (S.D.N.Y. July 28, 2015).

Second, the plaintiff must show a specific basis for imputing the hostile work environment to the employer. Tolbert, 790 F.3d at 439; see also Hill, 312 F. Supp. 2d at 476.

To analyze a hostile work environment claim, courts consider the "totality of the circumstances, in light of such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Patterson, 375 F.3d at 227 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  In addition, the plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).  Further, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." See Tolbert, 790 F.3d at 439; see also Thelwell, 2015 WL 4545881, at *9-10.

The plaintiff argues that by using the term "girl" in reference to the plaintiff, the defendants created a hostile work environment in violation of Section 1981.  Section 1981

7

recognizes "dog-whistle racism," or "the use of code words and themes which activate conscious or subconscious racist concepts and frames." Lloyd v. Holder, No. 11cv3154, 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013). "[F]acially non-discriminatory terms" may "invoke racist concepts that are already planted in the public consciousness," such as "welfare queen," "terrorist," "thug," and "illegal alien." Id. In determining whether race-neutral words are used as racially charged code words, "various factors" are important, such as "context, inflection, tone of voice, local custom, and historical usage." Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006) (per curiam) (holding that use of "boy," without any racial modification, may be evidence of discrimination); see also Ash v. Tyson Foods, Inc., 190 F. App'x 924, 926 (11th Cir. 2006) (per curiam) (applying the Supreme Court's articulated standard on remand, and concluding that the use of "boy" was conversational and non-racial); Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 821 (8th Cir. 2010) ("Not every use of the word 'girl' amounts to racial insult.").

Examining the totality of the circumstances, the plaintiff has failed to adduce sufficient evidence from which a rational trier of fact could conclude that she was subjected to a hostile work environment because of her race. The plaintiff alleges that she never heard Balidemic greet any white employees using

the term "girl." But this alone is insufficient to show racial animus because the only employees seated at the entrance to the workplace, Mondesir and Duhaney, were black.

The plaintiff further claims that Balidemic's tone of voice and manner when using the term -- not making eye contact, not attempting to make further conversation, and giggling when the plaintiff asked to be referred to by her name -- is also indicative of racial animus. While this behavior may have been unprofessional, there is insufficient evidence to show that the term was racially derogatory. Nor were the remarks physically threatening or humiliating. See Patterson, 375 F.3d at 227. Moreover, while the plaintiff did subsequently object to being referred to as a "girl," her deposition testimony suggests that she did not subjectively interpret the term to be racially derogatory at the time.

The plaintiff also references two emails sent by Balidemic to co-workers in which she wrote that she would have "the girls" assist with certain work-related requests. The emails are benign, and nothing about the context of these emails suggest that they were racially derogatory. Indeed, it would be a stretch to categorize any one of these emails as even a "mere offensive utterance," which, without more, is insufficient to show a hostile work environment. See id. at 227.

9

Even assuming that the use of the term "girl" could have racial undertones, Balidemic used the term in reference to the plaintiff five times (including the e-mails) over the course of two to three months. These incidents were therefore "episodic" and not "sufficiently continuous and concerted in order to be pervasive." Tolbert, 790 F.3d at 439; see also Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."). Even if Balidemic's few uses of the term "girl" to refer to the plaintiff were imbued with the racial subtext the plaintiff now gives them, the plaintiff has not shown that the comments constituted "more than a few isolated incidents of racial enmity." Williams v. Cty. of Westchester, 171 F.3d 98, 100-01 (2d Cir. 1999) (per curiam) (quoting Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986)). Such comments fall far short of the "steady barrage of opprobrious racial comments" required for a hostile work environment claim based on race. Id. at 101 (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)); see also Thelwell, 2015 WL 4545881, at *11.

The plaintiff also alleges that she was subjected to a hostile working environment because she was intensely scrutinized at the workplace. The plaintiff alleges that she was documented for failing to check her emails and faxes, reprimanded for abruptly hanging up the phone at the conclusion of a telephone call with Tabershaw, placed on probation, and subjected to constant monitoring. However, the plaintiff fails

10

to point to any credible evidence indicating that this treatment was due to her race. See Tolbert, 790 F.3d at 439. In fact, the plaintiff herself indicates that these incidents occurred only after the September 6 meeting where the plaintiff complained about the lack of respect at the workplace, and where the issue of race never arose. And the plaintiff does not dispute that her co-worker Duhaney, who is also black, remains employed with the defendants. The treatment experienced by the plaintiff, by itself, is not a basis to sustain a hostile work environment claim. See Lucenti v. Potter, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006) ("Allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim."); see also Thelwell, 2015 WL 4545881, at *11.

The defendants' motion for summary judgment dismissing the plaintiff's claim for a hostile work environment based on racial harassment under § 1981 is **granted**.

B.

In addition to her federal claim, the plaintiff also alleges a hostile work environment under NYCHRL § 8-107(1), retaliation under NYCHRL § 8-107(7), and aiding and abetting against the individual defendants under NYCHRL § 8-107(6).

Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir.

11

2013) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988).  Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction.  Lundy, 711 F.3d at 117-18.  These factors counsel against hearing state law claims when the federal claims against a party are dismissed at an early stage in the litigation.  Heard v. MTA Metro-N. Commuter R.R. Co., No. 02 CIV. 7565 (JGK), 2003 WL 22176008, at *3 (S.D.N.Y. Sept. 22, 2003).

The Court declines to exercise supplemental jurisdiction over the NYCHRL claims because it has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3); see also Grant v. Pathmark Stores, Inc., No. 06 CIV. 5755 (JGK), 2009 WL 2263795, at *12 (S.D.N.Y. July 29, 2009).  It is particularly appropriate to dismiss the hostile work environment claim here because the standard is lower under the NYCHRL, and New York courts should be given the opportunity to develop it.  See Thelwell, 2015 WL 4545881, at *11 ("The NYCHRL is intended to be more protective than . . . federal law."); see also Grant, 2009 WL 2263795, at *6.

The Court also declines to exercise supplemental jurisdiction over the retaliation claim because the only claim for retaliation is based on the NYCHRL, for which New York

12

courts should determine the applicable standard.[2]  See Heard, 2003 WL 22176008, at *5.  The NYCHRL claims are therefore dismissed without prejudice.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  Any remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion for summary judgment is granted.  The Complaint is dismissed, although the NYCHRL claims are dismissed without prejudice.  The Clerk is directed to enter judgment and to close the case.  The Clerk is also directed to close all pending motions.

SO ORDERED.

**Dated:     New York, New York**
**           November 28, 2016**                    /s/
                                            **John G. Koeltl**
                                    **United States District Judge**

---

[2] The Court further declines to exercise supplemental jurisdiction over the plaintiff's claim of aiding and abetting against the individual defendants under the NYCHRL.